May it please the Court, George Schreyer for Petitioner Phillips. Your Honor, to have rebuttal time, do I ask for it at the beginning or just keep track of my time? Do you want to reserve time? One minute, please. One minute, all right. Keep track of it, but I'll help you, too. Okay. In this case, Your Honors, the defendant tried twice to remove her attorney and get another attorney appointed. Sometime after that, at another hearing, she asked to represent herself. She filled out what's called a Feretta form in Riverside County, and the judge held a hearing. At that hearing, the judge said to her, is this what you really want, to represent yourself? And she said, no, what I really want is another attorney, but I've asked for that twice and been denied, and I took it up on a writ to the appellate court and was denied again. So I am representing myself because that's the only available option, which she meant was the only way to get this attorney off my case. The question is, is this an equivocal Feretta request? It's our contention that it's instead a conditional one, but expressly conditional. Generally speaking, Feretta defendants are divided into two groups. The unconditional Feretta defendant, that is somebody who wants to represent himself no matter who might be his attorney. So even if Abraham Lincoln or Clarence Darrow were his attorney, he would say, no, I can do a better job. I want to be my own attorney. I want no attorney, no matter who it is. The second and much larger group are conditional Feretta defendants. These are people who really want another attorney. The thing that they don't like is their current attorney. They want another attorney. They've tried to get another attorney. Those requests have been denied. And now they're representing themselves because they'd rather do that than have the attorney that they have on their case. In most cases, the conditional Feretta status is not expressly discussed during a court hearing. It's just understood inferentially because this person has asked for counsel, a substitute counsel before. It's been denied. Now they're asking to represent themselves. And you know that the reason that they're doing this is because this is the only way they can get rid of the attorney. The thing that makes this case different is they expressly asked if that's what you want. So it's sort of the, if you want in the Feretta context, the ask but don't tell case. That is, you can ask for counsel, but you can't tell why if you're a conditional defendant, because if you do, they will conclude that it's a equivocal request because you're saying I really would like another attorney. I'm a conditional Feretta defendant. But the trial judge is under restriction. Can't just agree. He's got to carry on a full hearing with the defendant to make sure that's what they really want. We've instructed them and all states have instructed them because they are unaware of the pitfalls. Are you saying that it was improper for the trial judge to carry on such a discussion with your client? No. I'm not saying that it's improper to ask about things such as pitfalls and disadvantages of self-representation. That's perfectly proper. In fact, it's required. And then afterwards you say you really want to represent yourself, and the person says, no, I really don't want to do that. No. After they've heard about the pitfalls. That's not what she said, though. What the judge said was not do you really want to represent yourself, because she was clear that that's what she really wanted. The judge said, is that what you really want, self-representation, as opposed to all of the things that might be available. And she was saying, no, I really wanted another attorney, but I'm seeking self-representation because that's all that's available to me. I'm troubled by the statement that she made that she did not feel qualified to represent herself. Is that a permissible thing for the judge to consider? No. I actually, no, it would not be under Godinez. It would not be. And under Ferretta itself and a bunch of other cases, and we cite those in the brief. No. You know, no defense, no layman is capable of representing herself at a trial for life without parole sentence under special circumstances in California. I mean, if they said that they thought that they were capable of representing themselves, you'd have some doubts about their mental competency. But many do. Many do. They have a right to, and they do. I mean, many do say that they feel that they can do it, and despite all the pitfalls in the lecture from the judge, they say, well, I can do it. Yes. And she was saying that. I mean, she was saying that she didn't feel competent to, but she wanted to anyway. Well, let's assume that the state court made a mistake and should have allowed self-representation at the time it was denied. Yes. How long did she go with the lawyer she didn't want before she hired a new one? A few weeks, about six weeks, I think. The trial was a year later? Roughly, yeah. But why wasn't the error harmless? Because of this Court's holding an ARLT, which we quoted at some length in the brief, which says that if you've been denied your Ferretta ruling, you're free to do whatever you can to get the best representation you can or present the case the best way you can. And the fact that you end up with an attorney of your own or hiring an attorney that you like somewhere along the line does not mean that it was not Ferretta error. And in ARLT, in light of that precise point, the Court reversed for Ferretta error. What about McCaskill, though? There you had a similar problem where the standby counsel really interfered with the defendant's approach to representing himself or herself, and the Court said it was harmless in that case because the guts of her, of the defendant's But, you know, it was done the way the defendant wanted, which it seems to me is what we have here. Well, but in that case, there was no preceding Ferretta denial, was there? I mean, there was a, she was allowed to be. So it was a problem with the standby counsel. Yes. But that's. Which interfered with the self-representation. But, you know, if a Ferretta motion is granted, properly granted, and then there are collateral issues regarding how the case is presented, that's distinguishable from a Ferretta motion being denied, which is reversible, per se, and then some other things happen later on. I'm just saying that the ARLT case, this Court has already dealt with it, and my understanding is that a panel decision binds another panel. I mean, it may be that ARLT is wrong and will be reconsidered in bonk at some time, but currently that's the law of the circuit. I want to. The closest case I found to your situation is from the Eighth Circuit. It's Hamilton v. Gross. Can you distinguish that for us? Hamilton v. Gross. That's not one that appears in 28th at third, is it? Pardon me? I didn't cite it in the briefs. I don't believe. No. Isn't that the? I don't know whether you're familiar with the case or not. I think I read it, but I didn't cite it. I'm just trying to recall it. This is a situation which the defendant made a pretrial motion for new appointed counsel. During the discussion at the trial court, the defendant indicated that he would go pro se if his motion to substitute was denied and indicated he's not very serious about wanting to represent himself, but will do so rather than having the assistance of this lawyer. And there they held that there was not an unequivocal request for a FREDA representation. And his statement was that he would do so. I don't know. Could you repeat that part? But you're not familiar with that case. No, I, you know, I'm not sure. Okay. I decided to call it to your attention, if you're aware of it. It seems to me, though, that, you know, if you were to ask any conditional FREDA defendant, do you really want to do this, they would say something like what the defendant said in this case. No, I really wanted another attorney. That's what I really want. But I can't have that, so I'm going to represent myself. You say, are you kind of reluctant about it? I suppose you'd say, yeah, but the main thing that's important to me is to get rid of this attorney that I have now. And the irony in this case is that what they're doing is saddling her with the thing that she, my client, with the thing that she said that she absolutely did not want under any circumstance, that is, I do not want this man to continue representing me. And they're saying because of the fact that that's what you really want, you don't get it, because although there are two other things available to you, you can't have it. We've denied you a substitute attorney, and now we're denying you self-representation. So by making clear that you do not want this guy, you're stuck with him. I think that that's – I mean, I don't know how Hamilton plays into that, but I think that that's the case with almost any conditional FREDA defendant. And it's cruel, I think, to say to them, you've got this right, but you can't exercise it because you really want something else that you can't have. I was going to – Do you want to reserve your time? Oh, yes. Thank you, Your Honor. Okay. Thank you. Good morning. May it please the Court. Deputy Attorney General Alana Butler on behalf of Respondent. Petitioner began his argument by saying that there were two categories of FREDA defendants. First, there was the completely unequivocal, I don't want counsel, I just want to represent myself. And second, there was the conditional one. Respondent would submit that those two categories are not prevalent in United States Supreme Court authority, which is the binding authority in an EDPA case, which it is today. If we look at the actual FREDA case, there's one line that's very, very important in order to ascertain whether there is a right to a conditional waiver in FREDA. And in the very beginning when the Court's discussing FREDA's request, the Court says the judge established FREDA wanted to represent himself and did not want another lawyer. And that's on page 808. So the idea that there's this established authority that conditional requests are indeed unequivocal requests is simply incorrect.  Roberts, Jr. How would you distinguish the Arlt case that your opponent relies on? Butler I'm actually not familiar with the Arlt case. I don't recall the facts of that one. But in looking at a number of the other cases that Petitioner, I'm sorry, relies upon from this Court, the vast majority or all of them are actually pre-AEDPA cases that discuss the conditional request. So at that time, this Court was not bound by the mandates of AEDPA. And in looking at the Court's decision, it simply cannot be said that the finding that this defendant's waiver of FREDA was equivocal, that that was an unreasonable determination. And that's the standard of review. Another point I'd like to make is, in looking at the information that the trial court had at the time of this request, Ms. Phillips had made two unsuccessful Marsden motions. She felt so strongly that she wanted another attorney. She actually appealed to the California Court of Appeal at that point. When she made her FREDA motion in the very beginning, she was asked to fill out a form. And during the course of that, Ms. Phillips says, Your Honor, it's a statement down here that says I have, and then the court reporter incorrects. And then she says, without the aid of counsel. And the court responds to her, that's what it is to represent yourself. And then Ms. Phillips replied, I understand that, but I will have some type of assistance. And then the court says, well, then you don't want to make a FREDA motion. I don't know what you want then. And then she says, I would like to have some assistance if I'm in custody, Your Honor. And the court responds. Ginsburg-Miller She could certainly have that. She could have the standby counsel. But if she could have standby counsel, but this is information that the trial court has that supports its conclusion that she does not really want to represent herself. She's already making some kind of in ways about having some type of an advisory counsel or standby counsel at her request. There's no problem with that. That occurs all the time. But if she really wants to represent herself. And she can't have any help? No. Of course she can have help. But I think that the point is, when you're looking at the totality of the circumstances here, unfortunately, we're not in a position to judge the way she made the request, her demeanor. And one of our arguments is that it very well could have been made out of frustration, and the trial court was in the very best position when she's talking about advisory counsel to judge how insistent she was upon wanting that type of assistance. And just maybe the level of frustration that she had when she was talking about not having a choice. And if you look at the later colloquy between Phillips and the Court, she's always going back to the Marston motion. It always goes back to new counsel. And, in fact, this Feretta motion, after it was denied without prejudice and the court said, you can do this at any time, which she did not subsequently do, she still went back to the Marston. And one of the things I find to be somewhat helpful in assessing these cases is let's assume for a moment that the trial court had granted her Feretta motion. How strong would the argument be the other way? I'm sure that Petitioner's counsel would stand up here and say, that court should not have actually granted the motion. It was clear from the record that what she really wanted was a new attorney and that it shouldn't have been granted. So the arguments are perhaps equally strong, probably more strong, against the fact that the court should have not or the court should not have granted the Feretta motion. But the point is she got what she wanted. And to not have counsel for, I think it was six weeks, I believe what happened was the last day of her, she made the motion on 9-11-98. She was represented by Mr. Schwartz on October 1st, 1998. Or that was her last day. I believe that's when counsel, new counsel was appointed. And the trial began well more than a year later. Now, were there any proceedings or decisions that the public defender did that affected her case in between the time that her Feretta motion was denied and she substituted in counsel? I believe what happened in that one status conference between Mr. Schwartz and new counsel was that all parties had stipulated there were actually three other defendants in this case. The parties had stipulated at that point that those three defendants would be severed, leaving her with Mr. Wilson. So that was the main action. And I believe all along Ms. Phillips was pushing for the case to be completely severed, even for Mr. Wilson. So there's no reason to indicate that anything happened of any real substance between that point. And I would just conclude by saying that in looking at the Court of Appeals decision, even though it could be looked at both ways, and in fact, the report and recommendation summed it up very well in a footnote. It said, while the record could also support a conclusion that the petitioner made a conditional but unequivocal request to represent herself, the record also supports a conclusion of the California Court of Appeal. To merit habeas relief, the petitioner must show that the state court applied the law to the facts of this case in an objectively unreasonable manner. This court cannot say that the conclusion of the Court of Appeal that petitioner's request was equivocal was objectively unreasonable. And that's exactly where this case comes down to. It may be a close call, but ultimately, given the constraints of deference to the state court, this court should find that that state court's decision was not objectively unreasonable, unless the court has any questions I would submit. All right. Thank you, counsel. Thank you. A few quick points. Counsel argued that Feretta is not a conditional case. Actually, it is. It's a case in which the defendant said that he did not want to be represented by the public defender. Then he tried all sorts of different ways to get away from that. Self-representation, motions for three motions for new counsel. Feretta is a conditional case. That's why this court's case is subsequent to it. Say that it is. Counsel said that there's no post-EDPA case saying so. There is a Third Circuit case cited in the brief that does. It's Buell v. Cooksey, a 2000 Third Circuit case. So there are post-EDPA cases that sort of realize that that's the situation. It wouldn't matter anyway, because Feretta is a conditional case in the first place. Counsel mentions that after the trial court gave information about not having or that she would need assistance or that the defendant brought up that she needed assistance, I want to point out that after that, she waived on a four-page waiver form. She waived her right to counsel after being informed that she is not entitled to assistance. So there is nothing in that which indicates that she wants anything else. She now knows. And finally, one last point. On the form or at the hearing itself, the trial court, I think, denied the right to self-representation on the basis of her feeling that she was incompetent. This whole equivocal thing came up later. The court, the trial court, went right by that. It talked about, is that what you really want? No, I really want counsel, but this is all that's available. Then the court went on to competency. She said she was not, she said, on that basis, not on those basis. And this was all of it. The court of appeal went off on conditional. On equivocal, on equivocal. But I don't think that the trial court did. If you were going to give any versus. Well, the problem is that under the way you look at EDPA, the court of appeal can make fact findings from the record. Not a fact finding, Your Honor. It's a, when the court says on that basis, it's referring to what just happened. Competency stuff, not equivocal stuff. The court was satisfied that this was not, I think the trial court was satisfied that this was not equivocal. Thank you, Your Honor. All right. Thank you, counsel. Phillips v. Henry is submitted. We'll take Marshall v. Taylor. We'll take Marshall v. Taylor. Good morning, counsel.
judges: Wallace, T. G. Nelson, Wardlaw